BRADFORD–WHITE CORPORATION

v.

ERNST & WHINNEY.

Civ. A. No. 83–3371.

United States District Court,
E.D. Pennsylvania.

Sept. 12, 1988.

---

Patrick W. Kittredge, Joseph M. Donley, Gardenia L. Brooman, Philadelphia, Pa., for plaintiff.

Raymond K. Denworth, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Presently before the court is the defendant's motion for summary judgment. Plaintiff initiated this action in July, 1983 alleging a cause of action under § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated thereunder and pendent state law claims for intentional misrepresentation, negligent misrepresentation and professional malpractice. Following a 13–day trial, the jury answered special interrogatories from which the court molded a verdict and entered judgment in favor of Bradford–White in the amount of $1,242,151.

In disposing of several post-trial motions, I granted the defendant's motion to amend judgment in the defendant's favor with respect to the pendent state law claims. I also granted the defendant's motion for a new trial with respect to the plaintiff's securities claims. The defendant now moves for summary judgment contending that in light of the Third Circuit's recent decisions in *In re: Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.1988) and *Hill v. Equitable Trust Co.,* 851 F.2d 691 (3d Cir.1988), the plaintiff's claims are time-barred.

### Background

The factual background giving rise to this litigation has been detailed in previously filed memoranda and only the facts necessary to a determination of the pending motion will be recited here.

The plaintiff, Bradford–White Corporation, is a Tennessee corporation which manufactures and distributes domestic and commercial water heaters. The defendant, Ernst & Whinney, is a national accounting firm which prepared financial statements which the plaintiff alleges contained material misrepresentations and omissions.

In June 1981, the plaintiff was interested in acquiring the W.L. Jackson Company ("Jackson Company"), a private Tennessee corporation which operated a water heater manufacturing plant in Chattanooga, Tennessee, and with the approval of the U.S. Justice Department arranged a meeting attended by representatives of both corporations. Due to time constraints imposed by Citicorp, the Jackson Company's primary lender, the acquisition had to be completed by June 22, 1981. Accordingly, the parties entered into a week of intense negotiations which culminated in the execution of a stock purchase agreement. Signed on June 21, 1981, but dated June 20, 1981, the agreement provided that the price of the Jackson Company stock would be determined by an audit of the company as of June 30, 1981.

Prior to executing this agreement, a consultant for the Jackson Company provided the plaintiff with the Jackson Company's financial statements, which had been prepared by the defendant and dated December 31, 1980, as well as interim financial statements through April 30, 1981. These statements were characterized as being prepared in accordance with generally accepted accounting principles and to fairly and accurately portray the financial condition of the Jackson Company. The statements disclosed a working capital deficiency, a potential warranty liability problem, a net operating loss of $1,097,427 in 1980 and a net worth of $1,793,203 in 1980.

The record reveals that, subsequent to executing the agreement, the plaintiff be-

came aware that the financial health of the Jackson Company was worse than pictured. In August, 1981, when the results of the June audit were made available, the defendant issued an opinion of the Jackson Company's financial condition which was significantly different from that contained in the December 31, 1980 financial statements. Nevertheless, the plaintiff continued to abide by the terms of the agreement. In October, 1981, the financial problems proved to be too great and the plaintiff filed a voluntary petition in bankruptcy on behalf of the Jackson Company. There was no improvement and plaintiff was forced to liquidate the Jackson Company in April, 1982. The plaintiff filed this action on July 14, 1983.

*Discussion*

█ In *In re: Data Access Securities Litigation*, 843 F.2d 1537 (3d Cir.1988), the Third Circuit answered the "troublesome question," faced several times earlier in this circuit, of determining the correct statute of limitations for causes of action arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. *Data Access*, 843 F.2d at 1537. The court held that the limitations period for "a complaint charging violation of section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation and in no event more than three years after such violation." *Id.* at 1550. In deciding the defendant's motion for summary judgment, I am required to decide whether the Third Circuit's decision in *Data Access* should be applied retroactively to the facts of this case, and if so, when the plaintiff discovered the facts which constituted the securities violation, thus giving rise to its cause of action.

A. *The Chevron Factors: Retroactive application of DATA ACCESS*

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) the Supreme Court summarized three factors to be considered in determining whether to apply a judicial decision retroactively. In applying these factors to this case, how-

ever, I am not writing on a clean slate. In *Hill v. Equitable Trust Co.*, 851 F.2d 691 (3d Cir.1988), a Third Circuit panel unanimously applied *Data Access* retroactively to bar the plaintiffs' § 10(b) and Rule 10b–5 claims. Although *Hill* does not dictate the result here, the court's analysis of the *Chevron* factors is instructive.

1. *Did Data Access Change Prior Law?*

The first *Chevron* factor is whether a decision establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreseeable. In answering this question, I must look to the state of the law when the plaintiff's cause of action arose. *See Hill*, at 697; *Al–Khazraji v. Saint Francis College*, 784 F.2d 505, 512 & n. 9 (3d Cir.1986), *aff'd*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Perez v. Dana Corp.*, 718 F.2d 581, 585 (3d Cir.1983); *see also Data Access*, 843 F.2d at 1557 (Seitz, J., dissenting) (looking to state of law when third amended complaint was filed but noting that date of filing is not relevant date in all cases). In this case, the state of the law at the time the plaintiff's claim arose can be gleaned from the Third Circuit's opinions in *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979); *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir.1980); and *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir. 1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982).

If I were deciding this case without the benefit of the Third Circuit's recent analysis in *Hill*, the plaintiff's argument that the law was clearly established when its claim accrued would be more persuasive. In fact, the plaintiff's position is supported by Judges Seitz, Sloviter and Mansmann in the dissenting opinion of *Data Access*, 843 F.2d at 1553. Although at the time the plaintiff's claim accrued the Third Circuit had not selected one specific limitations period, it did take an *ad hoc*, functional, claim-matching approach by first determining whether the action could have been brought under the state Blue Sky Laws.

If the plaintiff could not bring a cause of action under the state Blue Sky Laws, then the court was to apply the statute of limitations for common law fraud. *Id.* (Seitz, J., dissenting); *see also Sowell v. Butcher & Singer, Inc.*, No. 87–0714 Slip Op., at 9 n. 4 (E.D.Pa. May 12, 1987) [available on WEST-LAW, 1987 WL10712] (Judge Scirica stating he was bound by *Biggans*); *Dofflemyer v. W.F. Hall Printing Co.*, 558 F.Supp. 372, 377 (D.Del.1983) (opinion by Judge Stapleton implying a clear result from application of *Roberts* and *Biggans*); *cf. Ging v. Parker–Hunter Inc.*, 544 F.Supp. 49, 51 (W.D.Pa.1982) (characterizing *Biggans* as "controlling" under facts of that case).

After reviewing the *Roberts* and *Biggans* opinions, along with (then) Chief Judge Latchum's opinion in *Hill v. Der*, 521 F.Supp. 1370 (D.Del.1981), the *Hill* court concluded that "[c]lear holdings on which plaintiffs could rely, as in *Al–Khazraji* and its progeny, were absent when plaintiffs decided to begin this suit in (April) 1982." Even if I assume, *arguendo*, that the plaintiff's claim here did not accrue until it filed suit in 1983[1], I find no decisions in the Third Circuit between April 1982 and July 1983 when this suit was filed which settled the law with respect to the statute of limitations in 10b–5 cases. In fact, the lack of clarity surrounding the appropriate statute of limitations for claims alleging violations of § 10(b) and Rule 10b–5 has been noted by numerous district courts within the Third Circuit since the *Biggans* case was decided. *See, e.g., Cohen v. McAllister*, 673 F.Supp. 733, 736 (W.D.Pa.1987) (describing *Biggans* analysis as "fraught with ambiguity" resulting in "uncertainty among potential plaintiffs and defendants as to the timeliness of § 10(b) claims"); *Steinberg v. Shearson Hayden Stone, Inc.*, 598 F.Supp. 273 (D.Del.1984) (applying *Biggans* and *Roberts* but noting disagreement among judges); *Goodman v. Moyer*, 523 F.Supp. 35, 37 (E.D.Pa.1981) (quoting *Biggans*, 638 F.2d at 607 (Weis, J., dissent-

ing)) (characterizing *Biggans* limitation selection process as "confused and inconsistent body of law").

In 1981, in *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir.1981), a case not discussed by the *Hill* court, a unanimous panel of the Third Circuit applied *Biggans* to hold a § 10b and Rule 10b–5 claim to be timely filed by applying the six-year fraud statute of limitations. *Id.* at 192. Applying the *Hill* court's reasoning, since the *Sharp* decision was unanimous, one could argue that *Sharp* did much to clarify the law in this area.

Such a simplistic analysis, however, proves too much. To say that the law in this area was clear after the *Sharp* opinion is directly contrary to the *Hill* court's statement that the law was not clear at the time the Hill plaintiffs filed their claim in April 1982. *Hill*, 851 F.2d at 697. While it is pure speculation as to why the *Hill* court did not discuss *Sharp*, the answer probably lies in the fact that the *Sharp* opinion provided little analysis for the court to consider. Moreover, the *Sharp* court applied *Biggans* because it was "not distinguishable" from the facts of *Sharp*. *Sharp*, 649 F.2d at 192. Thus, the *Sharp* court did not have occasion to revisit the *Roberts* and *Biggans* analysis. As the *Hill* court noted, the problem with the *Roberts* and *Biggans* line of cases was that the analysis left considerable room for variation in different factual situations which, on occasion, led to inconsistent results. *See, e.g., Eisenberg v. Gagnon*, 564 F.Supp. 1347, 1357 (E.D.Pa.1983) (court applying different limitations period for different defendants). *See Data Access*, 843 F.2d at 1541; *Cohen*, 673 F.Supp. at 736; *Hill v. Der*, 521 F.Supp. at 1382–83. Thus, due to the factual similarity between *Biggans* and *Sharp*, the *Sharp* opinion did little to settle the uncertainty.

In addition to the uncertainty discussed by the *Hill* court, at the time the plaintiff's claim arose there was also uncertainty sur-

---

[1]. As Judge Seitz noted in his *Data Access* dissent, the date of filing the complaint is not necessarily the "critical date in applying the *Chevron* factors." *Data Access*, 843 F.2d at 1553

(Seitz, J., dissent). I selected the date of filing, however, to show that even at this late date the law in the Third Circuit, based upon the *Hill* court's analysis, was still unclear.

rounding the length of the state law statute of limitations for common law fraud. This uncertainty was noted by the *Biggans* court, *Biggans*, 638 F.2d at 607 n. 2, and by several district courts during the time period which the facts of this case were unravelling. *See, e.g., Fickinger v. C.I. Planning Corp.*, 556 F.Supp. 434, 438 (E.D.Pa. 1982) (noting Pennsylvania statute of limitations was unclear and applying two year limitations period); *Culbreth v. Simone*, 511 F.Supp. 906 (E.D.Pa.1981) (applying six year limitations period disagreeing with *Fickinger*); *but see D'iorio v. Adonizio*, 554 F.Supp. 222, 232 (M.D.Pa.1982) (relying on *Biggans* to apply the six year limitations period without discussion). Based on this case law, the plaintiff could not be certain that the six year Pennsylvania statute of limitations would apply to its suit until 1986 when the Third Circuit decided *A.J. Cunningham Packing v. Congress Financial Corp.*, 792 F.2d 330 (3d Cir.1986).

Accordingly, as the Third Circuit ruled in *Hill*, I find that under the facts of this case, the first prong of the *Chevron* test favors retroactive application of *Data Access*.

### 2. The Purpose of the DATA ACCESS Ruling

The second part of the *Chevron* test requires that "the merits and demerits in each case must be weighed by looking to the prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation." *Pratt v. Thornburgh*, 807 F.2d 355, 358 (3rd Cir.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 125, 98 L.Ed.2d 83

(1987). In *Hill*, the court assumed that on the facts of that case the resolution of the second *Chevron* factor was neutral. *Hill*, 851 F.2d at 698 (citing *Al–Khazraji*, 784 F.2d at 513; *Fitzgerald v. Larson*, 769 F.2d 160, 164 (3d Cir.1985)). In this case, I find no reason to depart from the *Hill* court's conclusion.[2]

### 3. The Equities of Retroactive Application

The final factor to be considered in the *Chevron* analysis requires me to weigh the inequity imposed by retroactive application, if any. Application of this factor, however, is not controlled by precedent, but instead depends upon the facts and equities of each case. *Dian v. United Steelworkers of America*, 633 F.Supp. 1059, 1058 (E.D.Pa.), *aff'd*, 806 F.2d 252 (3rd Cir.1986).

The Third Circuit has continually stated that the third *Chevron* factor overlaps the first factor because it would be inequitable to apply retroactively a limitations period which changed established law. *See Fitzgerald*, 769 F.2d at 164 (3rd Cir.1985). In this case, I have determined that the law was not clearly established when the plaintiff's claim accrued. Thus, according to the reasoning in *Fitzgerald*, there is little or no inequity in applying *Data Access* retroactively.

Two additional considerations, however, make resolution of this third factor more difficult. First, in *Hill*, the Third Circuit stated that the third factor of *Chevron* was the plaintiffs' weakest position because the plaintiffs would have faced the same outcome whether or not the *Data Access* limitations period was applied. This, however,

---

2. The purposes of the *Data Access* decision, i.e., promoting uniformity and avoiding untimely, time-consuming litigation and uncertainty, were the same as the purposes behind the Supreme Court's decisions in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and *Agency Holding Corp. v. Malley–Duff & Assoc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). *See Data Access*, 843 F.2d at 1549 (citing *Roberts*, 611 F.2d at 463 (Seitz, J., dissenting)). In cases where the first *Chevron* factor was not met, the Third Circuit has retroactively applied *Wilson* and *Malley–Duff*, finding that to do so would promote the purposes behind those Supreme Court decisions. *See Smith v. City of*

*Pittsburgh*, 764 F.2d 188 (3rd Cir.) (applying *Wilson* retroactively), *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985); *Gonzalez v. Katz*, No. 86–7254, Slip Op. (E.D.Pa. August 13, 1987) [available on WESTLAW, 1988 WL37615] (applying *Malley–Duff* retroactively), aff'd mem. 845 F.2d 1011 (3d Cir.1988). Accordingly, I am satisfied that the purposes of *Data Access* would be promoted by the retroactive application of that decision, even though this case is already in litigation. *See Smith*, 764 F.2d at 196. Nevertheless, because this case already has produced one lengthy trial, I cannot find that the policies of *Data Access* either clearly favor or disfavor retroactive application.

cannot be said for the plaintiff in the case *sub judice.* It is now clear that if the *Data Access* limitations period were applied here, the plaintiff would witness a five year shortening in the applicable limitations period.[3]

Second, in applying the third *Chevron* factor, courts often examine the posture of the case, including the time and money expended in the litigation and whether by applying the new principle of law retroactively the court will be rewarding a party for unexcused delay. *See Perez,* 718 F.2d at 588 (discussing *Chevron,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)); *Dian,* 633 F.Supp. at 1060-61. In this case neither party is guilty of procrastination or unexcused delay. At the same time, however, it is clear that considerable time and money has been expended in the prosecution of this claim. Finally, substantially all of the preparation for the new trial, which was granted based on inconsistent answers to special interrogatories submitted to the jury at the first trial, has been completed.

I am not persuaded that these considerations preclude retroactive application. Although the *Data Access Systems* decision did shorten the statute of limitations applicable to the plaintiff's claim, the fact remains that, as I concluded earlier, the law relating to the statute of limitations was "in ferment" at the time their claim accrued. *See Hill,* 851 F.2d at 697. Thus, even though the limitations period was

shortened, this is no different than other decisions in which a statute of limitations was retroactively applied despite the fact that the perceived limitations period was thereby shortened. *See, e.g., Perez,* 718 F.2d at 588 (applying *DelCostello* retroactively limiting limitations period proposed by plaintiff); *Smith,* 764 F.2d at 194–197.

Moreover, while much money and time has been expended on this case, the money and time was expended by both sides. Neither side can be faulted for delaying the case. Thus, while it is unfortunate that the plaintiff may lose its day in court due to the retroactive application of *Data Access,* it would be inequitable to deny the defendants a valid defense, which was pleaded earlier in the case, thus forcing it to litigate a claim which should be time-barred. Finally, while courts have considered the additional factors, I have found no cases in which a finding of retroactivity was based on these factors alone, especially when the first *Chevron* fact was not met.

Accordingly, it is my conclusion that the application of the several *Chevron* factors [4] in this case does not support an exception to the general rule of applying the law in force at the time a decision is rendered. *See Hill,* 851 F.2d at 695; *Lund v. Shearson/Lehman,* 852 F.2d 182, 183 (6th Cir. 1988). The decision of the Third Circuit in *Data Access Systems* will be applied retroactively in this case.[5] *See also Cohen v.*

---

**3.** Both parties admit that if the plaintiff's claim were governed by the Pennsylvania statute of limitations for common law fraud, the limitations period would be six years. *Cunningham,* 792 F.2d at 335–36. Even if the shorter two-year statute of limitations period applied, the plaintiff's claim would still be shortened by one year due to the *Data Access* decision.

**4.** Several courts have stated that the most important factor of the *Chevron* test is the first factor. *Lund v. Shearson/Lehman,* 852 F.2d 182, 183 (6th Cir.1988); *John Does 1–100 v. Ninneman,* 634 F.Supp. 341, 342 n. 4, 344 (citing *Farmer v. Cook,* 782 F.2d 780, 781 (8th Cir. 1986)). Moreover, it has been stated that in applying the *Chevron* factors, if the "first and most important" factor, *John Does,* 634 F.Supp. at 344, is not satisfied, the rule of law at issue will be applied retrospectively without further analysis. *Lund,* at 183 (citing *United States v. Johnson,* 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202 (1982)). Despite this

case law, I have given the plaintiffs the benefit of applying all three *Chevron* factors.

**5.** I am aware of the recent opinion in this district in which Judge Ditter ruled that *Data Access* would not be applied retrospectively. *ITG, Inc. v. Price Waterhouse,* 697 F.Supp. 867 (E.D. Pa.1988); *Gruber v. Price Waterhouse,* 697 F.Supp. 859 (E.D.Pa.1988). In both opinions, however, Judge Ditter relied heavily on the Third Circuit's decision in *Sharp,* 649 F.2d at 191–92, and stated that the *Sharp* decision created clear precedent upon which the plaintiffs in those cases could rely. *Gruber,* at 862–863; *ITG, Inc.,* at 869. *Sharp,* however, was a 1981 decision. The *Gruber* and *ITG* opinions did not address the Third Circuit's statement in *Hill* that "[c]lear holdings on which plaintiffs could rely ... were absent in [April] 1982." *Hill,* at 697. Moreover, in *Gruber,* Judge Ditter conceded that in some situations, the law as represented by *Biggans* and *Roberts* may have been unsettled.

*McAllister,* 688 F.Supp. 1040 (W.D.Pa. 1988).

### B. *Commencement of the statute of limitations*

Having decided to apply the decision in *Data Access* retroactively, I now must determine when the statute began to run. If the limitations period commenced prior to July 14, 1982, the plaintiff's claim is time-barred. Plaintiff argues that this is an issue of fact which must be decided by the jury on a more fully developed record relating to this specific issue. The defendant, relying on the extensive record developed at the first trial, maintains that the statute began to run, at the latest, on January 29, 1982.

In *Data Access,* the Third Circuit stated that in § 10(b) and Rule 10b-5 claims the limitations period "is one year after the plaintiff *discovers the facts constituting the violation* and in no event more than three years after such violation." *Data Access,* 843 F.2d at 1550 (emphasis added). I interpret this language to be consistent with the general rule that the limitations period commences when the plaintiff is aware of facts which point to fraud or when the possibility of fraud is or should be apparent. *Hill v. Equitable Bank,* 655 F.Supp. 631, 640-41 (D.Del.1987); *Ficking-er,* 556 F.Supp. at 439. In other words, the knowledge required by a plaintiff in order to commence the running of the statute of limitations " 'is merely that of "the *facts* forming the *basis* of his cause of action," ... not that of the existence of the cause of action itself.' " *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988) (citing *Vigman v. Community National Bank & Trust Co.,* 635 F.2d 455, 459 (5th Cir.1981) (emphasis in original)). The plaintiff cannot ignore "storm warnings", *Cook v. Avien, Inc.,* 573 F.2d 685, 697 (1st Cir.1978), and await the leisurely discovery of this claim. *Jensen,* 841 F.2d at 607.

■ Based upon the record in this case, I find that sufficient "warnings" existed well before July 14, 1982 from which the plaintiff could foresee not merely a financial storm, but a financial hurricane. The record is clear that the plaintiffs were aware of facts no later than January 1982 which constituted the violations upon which this suit is based. For example, in August, 1981, the president of Bradford–White, stated in a letter to a creditor's representative that there was a serious deficiency in the inventory of the Jackson Company. *DeLuca Notes of Testimony (N.T.),* July 10, 1986, at 35–37. Moreover, he testified that in July, 1981 it was clear that there was no relationship between what the plaintiff expected based on the financial statements and what was actually present, and that the financial problems the Jackson Company faced were much more severe than anticipated. *N.T.* DeLuca, July 8, 1986, at 121. Finally, there is testimony in the record which suggests that the only reason the plaintiff did not file suit as early as January, 1982 was because of a desire to reorganize the company and because the damages were perceived to be unclear. *N.T.,* July 17, 1986 at 85–86. The very fact that the plaintiffs were considering filing suit at that time, however, leads to the conclusion that they knew of the facts which constituted the alleged Securities Act violations.

While courts generally refrain from granting summary judgment on the issue of when a statute of limitations commenced, summary judgment can be granted with respect to this issue when the record supports such a finding. *Hill,* 655 F.Supp. at 641; *see also General Builders Supply Co. v. River Hill Coal,* 796 F.2d 8, 13 (1st Cir.1986). There can be no doubt that by January 1982, if not before, plaintiff knew of the facts which constituted the basis for this law suit.

Accordingly, I will grant the defendant's motion for summary judgment.

*See Gruber,* at 862. Accordingly, I decline to follow *Gruber* and *ITG, Inc.*