**BRADFORD–WHITE CORPORATION,**
Appellant in 88–1781

v.

**ERNST & WHINNEY.**

**BRADFORD–WHITE CORPORATION,**

v.

**ERNST & WHINNEY,**
Appellant in 88–1828.

Nos. 88–1781, 88–1828.

United States Court of Appeals,
Third Circuit.

Argued March 14, 1989.

Decided April 21, 1989.

Rehearing and Rehearing In Banc
Denied July 14, 1989.

---

**1154**

Patrick W. Kittredge (argued), Joseph M. Donley, Gardenia L. Brooman, Kittredge, Kaufman & Donley, Philadelphia, Pa., for Bradford–White Corp.

Raymond K. Denworth, Jr. (argued), William J. Lehane, Horace D. Nalle, Jr., Drinker Biddle & Reath, Philadelphia, Pa., T. Maxfield Bahner, Chambliss, Bahner, Crutchfield, Gaston & Irvine, Chattanooga, Tenn., for Ernst & Whinney.

Before MANSMANN, GREENBERG and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This is a securities law case under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, in which Bradford–White Corporation, the buyer of the stock of W.L. Jackson Manufacturing Co., is suing Ernst & Whinney, the accounting firm that prepared the financial statements for Jackson on which Bradford–White relied in purchasing the stock. Following a jury trial on the federal securities law claim and pendent Tennessee state law claims for common law fraud, malpractice and negligent misrepresentation, the district court sent the case to the jury on a set of special interrogatories. The court then molded a verdict in accordance with the jury's answers and entered judgment in favor of Bradford–White for $1,242,151 on July 25, 1986. The judgment does not indicate whether the recovery was predicated on a federal or state cause of action, or both.

In post-trial motions to amend the judgment or for a judgment notwithstanding the verdict, or, in the alternative, for a new trial, Ernst & Whinney contended that the jury's answers to the special interrogatories were irreconcilable. It also urged, relying on the decision in *Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 788 F.2d 1500 (11th Cir.1986), decided May 9, 1986, that the securities law claim was barred by the statute of limitations. The court agreed that the answers were irreconcilable and, by order of August 25, 1987, amended the judgment on the state law claims for no cause of action in favor of Ernst & Whinney. Further, the court vacated the judgment on the federal securities law claim and ordered a new trial limited to that claim. However, it denied Ernst & Whinney's motion to amend the judgment on the securities law claim or to grant it a judgment notwithstanding the verdict in its favor on that claim.

The court in its opinion of August 25, 1987, rejected Ernst & Whinney's statute of limitations argument, observing that "[Ernst & Whinney] now argues for the first time that [Bradford–White's] 10b–5 claim is barred by the applicable statute of limitations." It noted that the *Friedlander* decision was not controlling law and that it had been reported more than a month prior to the trial. Consequently, it

found that "[Ernst & Whinney] presents a new issue, not raised at trial, premised on a noncontrolling decision which was reported prior to trial." Thus, the court concluded that "the statute of limitations issue is not preserved and is deemed to have been waived." Bradford–White moved for partial reconsideration of the order of August 25, 1987, but its motion was denied by order of November 24, 1987.

Following the disposition of these motions we delivered our in banc opinion in *In re: Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), and a panel decision in *Hill v. Equitable Trust Co.,* 851 F.2d 691 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). *Data Access* made clear that the statute of limitations in section 10(b) and Rule 10b–5 cases is the shorter of one year after the plaintiff discovers the facts constituting the violation or three years after the violation. In *Hill* we held that this limitations period, though shorter than that previously applied by this court, could be applied retroactively, at least in some circumstances. Thereafter, Ernst & Whinney moved for summary judgment on the securities law claim, contending that the statute of limitations barred the action. The district court granted this motion by order of September 12, 1988, thus terminating all proceedings in that court.[1] 699 F.Supp. 1085 (E.D.Pa.1988). Bradford–White then appealed from the orders of August 25, 1987, November 24, 1987, and September 12, 1988. Ernst & Whinney filed a protective cross-appeal from the order of August 25, 1987, insofar as that order denied its motions for amendment of the judgment on the securities law claim or for entry of a judgment notwithstanding the verdict on that claim in its favor.

We have appellate jurisdiction under 28 U.S.C. § 1291. The district court had jurisdiction under both 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.

Inasmuch as we find that the jury's answers to the special interrogatories are reconcilable, we hold that the court erred in ordering a new trial on the securities law claim. Moreover, we find that Ernst & Whinney waived its affirmative defense under the statute of limitations by failing to raise it at the trial. Consequently, we will reverse and remand this case so that the judgment of July 25, 1986, may be reinstated as to the securities law claim. We thus do not review the judgment in favor of Ernst & Whinney on the state law claims as Bradford–White concedes that a judgment in its favor under the securities law claim gives it all the relief to which it is entitled. Accordingly, the balance of Bradford–White's appeal is moot. Finally, we will affirm the district court on the matters raised in Ernst & Whinney's cross-appeal.

## I.  BACKGROUND

At the time of the events leading to this action, the W.L. Jackson Manufacturing Co., was in the business of manufacturing home water heaters. In the early 1970's Jackson engaged Ernst & Whinney, a national accounting firm, to act as its independent auditor. Ernst & Whinney continued to serve in this capacity through a period including the transactions forming the basis of this action. In April 1981,

---

1. We do not understand why the district court retreated from its earlier position that the statute of limitations had been waived. In its earlier opinion of August 25, 1987, the court contemplated that there would be a second trial because of the irreconcilable answers to the interrogatories. While our opinion in *Data Access* undoubtedly gave legal support to the limitations defense, it could not have affected the factual circumstances which underlay the district court's finding of waiver—waiver and legal validity obviously constituting separate concepts. In its extensive memorandum opinion of September 12, 1988, granting summary judg-

ment because of the limitations bar, the district court never mentioned its earlier finding that the defense had been waived. It opined that it would be inequitable to deny Ernst & Whinney a valid defense under *Data Access,* since it had pleaded the statute of limitations and it should not be forced "to litigate a claim which should be time-barred." 699 F.Supp. at 1090. But it is obvious that the court had been willing to force it to do exactly that when it ordered the new trial on August 25, 1987, since it found that the defense had been waived and not that it was invalid.

Ernst & Whinney issued its opinion on Jackson's consolidated financial statements predicated on records through December 31, 1980. The April 1981, opinion stated that:

[o]ur examinations were made in accordance with generally accepted auditing standards and, accordingly, included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances.

Ernst & Whinney's formal opinion also stated that, subject to certain exceptions and qualifications, the consolidated financial statements fairly presented Jackson's financial position "in conformity with generally accepted accounting principles applied on a consistent basis." On the basis of Jackson's December 1980, financial statements, as audited and certified by Ernst & Whinney, its net worth was $1,793,203.00.

In mid-June 1981, Bradford–White, which also manufactured home water heaters, began negotiating for the purchase of Jackson and at that time first saw Jackson's December 31, 1980, financial statements. The financial statements disclosed that Jackson was financially troubled; indeed, Bradford–White acknowledges in its brief that it knew "it was purchasing a troubled company." Bradford–White maintains that the information indicated that these problems were attributable to "a working capital problem due to inefficiency and improper management." As the district court explained in its August 25, 1987, opinion, Citicorp, Jackson's chief lender, imposed time restrictions such that the acquisition had to be completed by June 22, 1981.

On June 21, 1981, Bradford–White concluded a Stock Purchase Agreement dated June 20, 1981, with Jackson's individual stockholders for the purchase of substantially all of its stock. The Agreement provided that the purchase price was to be determined on the basis of Jackson's June 30, 1981, net worth with a minimum purchase price and that Ernst & Whinney would again serve as the auditor of Jackson's financial statements.

Following the consummation of this Agreement, Ernst & Whinney conducted an audit of Jackson during which the extent of its financial problems became known. Bradford–White asserts that it became aware that Jackson had deeper and more significant financial problems than Bradford–White could reasonably have anticipated and that these problems had existed for some time but had been concealed in the certified financial statements. Ernst & Whinney's June 1981, audit concluded that Jackson's net worth was negative $3,606,-647.00. Based on this decrease in net worth of over $5,300,000 in less than six months, Bradford–White contends that "it found itself in possession of an asset-depleted, liability-ridden company on the verge of bankruptcy." Bradford–White in its brief blames Ernst & Whinney for this situation contending that "[t]he false and misleading financial statements for the year-end December 1980 had masked the true state of the Jackson Co.'s financial condition." Ultimately, Jackson went through bankruptcy proceedings. In view of Jackson's negative net worth, Bradford–White became liable under the Stock Purchase Agreement only for the floor price of the stock.[2]

As a result of the Ernst & Whinney reports, on July 14, 1983, Bradford–White filed the complaint in this action against Ernst & Whinney in the United States District Court for the Eastern District of Pennsylvania. On September 7, 1983, Ernst & Whinney filed its answer which included an affirmative defense that "[p]laintiff's claim is barred in whole or in part by the applicable statute or statutes of limitations and by the doctrine of laches."[3]

---

**2.** In fact, Bradford–White negotiated a settlement and paid even less than this amount for the stock.

**3.** The matter was before us previously after Ernst & Whinney obtained a summary judgment on the securities law count and a dismissal of the state law claims. We reversed and remanded for further proceedings. *See Bradford–White Corp. v. Ernst & Whinney,* 770 F.2d 1067 (3d Cir.1985).

Ernst & Whinney did not, however, indicate what it conceived was the "applicable" statute of limitations.

Following a thirteen day trial in July 1986, the district court submitted the case to the jury on eleven special interrogatories. Due to the importance of the exact wording of the special interrogatories and the jury's answers, we quote them in full:

1. Do you find by a preponderance of the evidence that Defendant Ernst & Whinney, in connection with its audit or opinion concerning the December 31, 1980 consolidated financial statements of the W.L. Jackson Manufacturing Company, made a material misrepresentation or a material omission with respect to any of the following:

(a) Inventory [Yes]

(b) Accounts Receivable [No]

(c) Product Warranty Liability [Yes]

(d) Net Worth [Yes]

(e) Net Income (loss) [Yes]

(f) That Ernst & Whinney conducted its audit in accordance with generally accepted auditing standards [Yes]

(g) That the financial statements taken as a whole as qualified by the opinion of Ernst & Whinney presented fairly the financial position of the W.L. Jackson Manufacturing Company in accordance with generally accepted accounting principles [No]

If you have answered 'yes' to one or more of the above, proceed to question # 2.

If you have answered 'no' to each of the above, proceed directly to question # 6.

2. Do you find by a preponderance of the evidence that any of the representations or omissions were made *either* (1) with *knowledge* that the statement was false or misleading, or (2) with reckless indifference as to whether or not it was true? [Yes]

If your answer is 'yes' please identify by letter the particular item or items: [c, f] and then proceed to question # 3.

If your answer is 'no' as to each item, proceed to question # 6.

3. With regard to those items identified in your response to question # 2, do you find by a preponderance of the evidence that Bradford–White (1) relied on the false statement or misleading omission in deciding to buy the stock of the W.L. Jackson Company, and (2) that it was reasonable to so rely? [Yes]

If your answer is 'yes' identify by the letter used above which item or items: [f] and then proceed to question # 4.

If your answer is 'no' as to each item, proceed directly to question # 6.

4. Were the representations by Ernst & Whinney made without any reasonable ground for believing it to be true and with the intent to induce others to rely upon it? [Yes]

Proceed to question # 5.

5. Were the representations by Ernst & Whinney made with the intent to defraud others? [No]

Proceed to question # 6.

6. Do you find by a preponderance of the evidence that Ernst & Whinney failed to use the care and skill ordinarily used in like cases by reputable members of the accounting profession practicing in the same or a similar locality, under similar circumstances? [Yes]

If your answer is 'yes' proceed to question # 7.

If your answer is 'no' and you have answered 'no' to questions # 1, # 2 *or* # 3, do not proceed any further.

If your answer is 'no' and if you have answered 'yes' to questions # 1, # 2 *and* # 3, go directly to question # 10.

7. Did Ernst & Whinney's failure as described in question # 6, lead to a material misrepresentation or a material omission upon which Bradford–White relied? [Yes]

If your answer is 'yes' proceed to question # 8.

If your answer is 'no' and you have answered 'no' to questions # 1, # 2 or # 3, do not proceed any further.

If your answer is 'no' and if you have answered 'yes' to questions # 1, # 2 *and* # 3, go directly to question # 10.

8. Was Bradford–White contributorily negligent? [Yes]

If you have answered 'yes' proceed to question # 9.

If your answer is 'no' proceed directly to question # 10.

9. Do you find that Bradford–White's negligence is too far removed as to time or place or causative force to be a direct or proximate cause of the injury? [No] If your answer is 'yes' proceed to question # 10.

If your answer is 'no' and you have answered 'no' to questions # 1, # 2 *or* # 3, do not proceed any further.

If you have answered 'yes' to questions # 1, # 2 *and* # 3, proceed to question # 10.

10. In what amount do you award damages? [$1,242,151]

Proceed to question # 11 only if you have answered 'yes' to question # 9.

11. State the amount by which the damages should be reduced to reflect Bradford–White's proportional contribution to the damages.[4]

Neither party requested that the matter be submitted for a general verdict in addition to answers to interrogatories and the district court did not so submit it. *See* Fed.R. Civ.P. 49(b). From the jury's answers the court molded a verdict and entered the judgment in favor of Bradford–White in the amount of $1,242,151.

The post-trial proceedings which we have already described then ensued and this appeal followed. While numerous questions have been briefed on this appeal, we find that we need only determine whether the jury's answers to the special interrogatories were reconcilable and, if so, whether Ernst & Whinney may raise the statute of limitations as a defense.

## II. THE JURY'S ANSWERS TO SPECIAL INTERROGATORIES

■ As we have stated, the court concluded that one of the jury's answers to the special interrogatories was irreconcilable with the other answers and consequently it ordered a new trial. Rulings on motions for a new trial are reviewable only for an abuse of discretion unless the court's denial of the motion is based on the application of a legal precept, in which case the review is plenary. *See Honeywell v. American Standards Testing Bureau,* 851 F.2d 652, 655 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 795, 102 L.Ed.2d 787 (1989); *see also Link v. Mercedes–Benz of North America, Inc.,* 788 F.2d 918, 921 (3d Cir. 1986); *cf. Dent v. Cunningham,* 786 F.2d 173, 175 (3d Cir.1986) (review of the selection, interpretation and application of legal precepts is plenary).

Here we conclude that the jury's answers may be harmonized. Thus, as the court was obliged as a matter of law for the reasons we will explain to enter a judgment in favor of Bradford–White, our review is plenary.

The jury's answers to the subparts of the first interrogatory establish that Ernst & Whinney's audit or opinion of Jackson contained material misrepresentations or material omissions with respect to five elements: inventory, product warranty liability, net worth, net income, and that the audit was conducted in accordance with generally accepted auditing standards (GAAS). The answer to the second interrogatory determined that the misrepresentations or omissions were made with scienter with respect to two elements: product warranty liability and that the audit complied with GAAS. The jury's answer to the third interrogatory found that Bradford–White reasonably relied on Ernst & Whinney's false statement or misleading omission that the audit complied with GAAS. Finally, the answer to the fourth interrogatory indicated that Ernst & Whinney made its representations without any reasonable ground to believe that it was true and with the intent to induce reliance. Taken together these answers constitute a finding of liability under Rule 10b–5 for the damages the jury found. *See Deutschman v. Beneficial Corp.,* 841 F.2d 502, 505–06 (3d Cir.), *cert. filed,* 57 U.S.L.W. 3062 (1988).

4. The jury supplied no amount in answer to 11.

The crux of this finding of liability is that Ernst & Whinney failed to conduct an audit of Jackson which complied with GAAS but that it nonetheless represented that it had complied with GAAS. Ernst & Whinney maintains that this basis of liability cannot be reconciled with the jury's answer to special interrogatory 1(g) that there was no material misrepresentation or material omission such that "the financial statements taken as a whole ... presented fairly the financial position of the W.L. Jackson Manufacturing Company in accordance with generally accepted accounting principles" (GAAP). Ernst & Whinney argues that this answer to special interrogatory 1(g) demonstrates that "the overall financials were not misstated" and that, taken as a whole, its reports accurately reflected Jackson's financial position and that the findings of the jury are not contradictory. It therefore contends that on the basis of the jury's answers, it was entitled to entry of a judgment in its favor. We reject this interpretation as it stands in conflict with the jury's other answers which showed that the December 31, 1980, financial statements misrepresented or made material omissions as to inventory and product warranty liability and thus, not surprisingly, net worth and net income or loss. Accordingly, Ernst & Whinney's interpretation cannot possibly reflect the jury's intent. We also point out that Ernst & Whinney's interpretation is completely at odds with its own audits which showed a dramatic change in net worth between December 31, 1980, and June 30, 1981.

While we cannot accept Ernst & Whinney's interpretation of the answers to the interrogatories, we nevertheless are obliged to attempt to harmonize the answers, for it is well established that a verdict must be molded consistently with a jury's answers to special interrogatories when there is any view of the case which reconciles the various answers. In *Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962), the Supreme Court instructed that:

> neither we nor the Court of Appeals can redetermine facts found by the jury any more than the District Court can predetermine them. For the Seventh Amendment says that 'no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.'

369 U.S. at 358–59, 82 S.Ct. at 783. Because of this deference to jury findings the Supreme Court explained:

> [w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment.

*Id.* at 363, 82 S.Ct. at 786 (citing *Arnold v. Panhandle & Sante Fe Ry. Co.*, 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889 (1957); *Dick v. New York Life Ins. Co.*, 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959)).

As our precedents make clear, deference to jury findings requires that we reverse a district court's erroneous conclusion that the jury's answers are in conflict. *See Barnhart v. Dollar Rent A Car Systems, Inc.*, 595 F.2d 914, 919 (3d Cir.1979) ("[b]ecause a court must interpret a jury's findings of fact as consistent whenever possible, we believe that the district court erred in shaping its judgment in this case.... We therefore will vacate the judgment of the district court and will remand the case for entry of judgment...."); *see also Scott v. Plante*, 641 F.2d 117, 124–25 (3d Cir.1981) ("[s]ince the defendants did not in the trial court object to the form of the interrogatories either before or after the verdict, and do not on appeal argue that they were prejudiced by the way the questions were formulated, we must read them in a manner which reconciles them with the jurors' probable intention in light of the Court's instructions."), *vacated on other grounds*, 458 U.S. 1101, 102 S.Ct. 3474, 73 L.Ed.2d 1362 (1982); *Jones & Laughlin Steel Corp. v. Johns–Manville Sales Corp.*, 626 F.2d 280, 293 (3d Cir.1980) ("[i]f there exists 'a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.' Since there is at

least one way to explain the jury's answers to the interrogatories, we are bound to affirm them."); *Franklin Music Co. v. American Broadcasting Co.*, 616 F.2d 528, 535 (3d Cir.1979) ("[t]he role of this court in reviewing seemingly inconsistent answers to special interrogatories is to search for a reading of the jury's responses that makes them consistent").

Clearly, there is a way to harmonize the answer to 1(g) with the remainder of the answers. The jury found that Ernst & Whinney failed to follow GAAS when it did not uncover the misrepresentations or omissions with respect to inventory, product warranty liability, net worth, and net income. Nonetheless, the jury found that Ernst & Whinney complied with GAAP in the *presentation* of the incomplete data it had obtained as a result of the defective audit. This interpretation clearly harmonizes the answers as there is simply nothing irreconcilable in finding an auditor at fault for failing to uncover information but in concluding that it properly presented what it did find. Thus, the jury's finding on interrogatory 1(g) in no way undermined its answers to the other questions.[5]

There was ample evidence supporting this reading of the jury's answer to special interrogatory 1(g). As the district court noted in its memorandum resolving the post-trial motions, there was evidence that "had a GAAS audit been conducted, [Ernst & Whinney] would have uncovered material information as to inventory, product warranty liability, net worth and net income, all of which the jury concluded were materially misstated in the 1980 financial statements." Further, the court recognized there was evidence presented not only that Jackson's employees failed to provide documents to Ernst & Whinney during the audit but that Ernst & Whinney's "work papers reflect statements and documents supplied by management which were accepted by [Ernst & Whinney] without verification." On the other hand the jury could have concluded that the financial statements fairly presented the information obtained by Ernst & Whinney.

We are satisfied, therefore, that our reading of the jury's answers is not a mere post hoc rationalization. Consequently, we conclude that the district court erred in determining that the jury's answers to the special interrogatories could not be reconciled. Thus, it is evident that the order for the new trial on the securities law claim must be reversed and relief denied on Ernst & Whinney's defensive cross-appeal which seeks a judgment in its favor on that claim.

## III. THE STATUTE OF LIMITATIONS

■ Our conclusion that a new trial should not have been ordered cannot in itself resolve this appeal because the court did, after all, ultimately conclude that the securities law claim was barred by the statute of limitations. 699 F.Supp. at 1091. Bradford–White, however, contends that Ernst & Whinney waived the limitations defense.[6]

Ernst & Whinney responds to the waiver contention by pointing out that it raised the statute of limitations defense in its answer. But while this is true, it did not file a motion or present argument before the district court on the statute of limitations issue at any time before or at the trial. At oral argument before this court we understood the attorney for Ernst & Whinney to state that a conscious, tactical decision had been made not to move for dismissal or for summary judgment on the limitations basis as such a motion would have somehow given credence to Bradford–White's claims,

---

**5.** The court in the charge did not define GAAS and GAAP but there was no objection to this omission. Thus, while accountants may regard the terms as involving somewhat overlapping concepts, and may consider GAAP as including the concept of both valuation and disclosure, *i.e.,* the material fairness of the auditor's representation, the jury was not bound by the court to that understanding. Thus, on the basis of the

charge the jury was entitled to understand the word "presented" in interrogatory 1(g) to have its ordinary meaning.

**6.** Inasmuch as the claim of waiver raises legal questions, our review on the issue is plenary. *See Dent v. Cunningham,* 786 F.2d at 175.

**1161**

thus prejudicing Ernst & Whinney's defense on the merits.[7]

█ In the circumstances, it is clear that by the end of the trial Ernst & Whinney had waived any possible statute of limitations defense. As we have said, albeit in a diversity case under Pennsylvania law, "[t]he statute of limitations is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant." *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 487, 498 (3d Cir.1985); *see also* Fed.R. Civ.P. 12(h)(2) and 51. Here, Ernst & Whinney simply did not attempt to establish this affirmative defense before or at trial. Obviously it would be grossly unfair to allow a plaintiff to go to the expense of trying a case only to be met by a new defense after trial. In this regard, we can hardly excuse Ernst & Whinney's failure to raise the defense on the circumstance that *Data Access* was decided after the trial and thus the bar of the statute may not have been apparent to it before or at the trial. The irony of such a ruling would be evident in view of our decision in *Hill v. Equitable Trust Co.,* 851 F.2d 691, applying *Data Access* retroactively to bar claims in that action. If *Data Access* may apply to complaints filed before it was decided then surely it may apply to waivers before it was decided as well. We could hardly hold that Bradford–White but not Ernst & Whinney should have anticipated *Data Access*.[8]

## IV. CONCLUSION

In view of the aforesaid, we will reverse the order of August 25, 1987, to the extent that it granted Ernst & Whinney a new trial on the securities law claim and we will reverse the order of November 24, 1987,

denying Bradford–White's motion for reconsideration of the order of August 25, 1987, to that extent. We will also reverse the order of September 12, 1988, granting Ernst & Whinney summary judgment. We will, therefore, remand the case to the district court so that judgment may be entered on the federal securities law claim for $1,242,151 as of July 25, 1986, in favor of Bradford–White against Ernst & Whinney. We will dismiss the rest of Bradford White's appeal as moot. We will affirm the order of August 25, 1987, to the extent that Ernst & Whinney has appealed from it. Finally, we will remand for entry of an order consistent with this opinion.

---

7. Even if Ernst & Whinney's failure to raise the defense was not a conscious, tactical decision our result on the waiver issue would be the same.

8. We also point out that a judgment notwithstanding the verdict could not be granted on the statute of limitations issue as there was no motion for a directed verdict on this ground. *See Orlando v. Billcon Int'l, Inc.,* 822 F.2d 1294, 1297–98 (3d Cir.1987); *Bonjorno v. Kaiser Aluminum & Chemical Corp.,* 752 F.2d 802, 814 (3d Cir.1984), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986). While later the court granted summary judgment on the statute of limitations issue we cannot be certain that Bradford–White would have been unable to present germane additional evidence on the point if a motion had been made for a directed verdict. *See Levinson v. Prentice–Hall, Inc.,* 868 F.2d 558, 563 (3d Cir.1989).