

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-10-2008

# Otos Tech Co Ltd v. OGK Amer Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3627

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Otos Tech Co Ltd v. OGK Amer Inc" (2008). *2008 Decisions.* Paper 378.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/378

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 07-3627 & 07-3775
_____

OTOS TECH CO., LTD.

v.

OGK AMERICA, INC.;
YALE KIM a/k/a Youngil Kim,
                    <u>Third Party Plaintiffs</u>

v.

OTOS OPTICAL CO., LTD.;
MOON YOUNG HUH,
                    <u>Third Party Defendants</u>

OTOS TECH CO., LTD.; OTOS OPTICAL CO., LTD; MOON YOUNG HUH,
                    Appellants in 07-3627

OGK AMERICA, INC.; YALE KIM,
                    Appellants in 07-3775
_____

On Appeal from the United States District Court
For the District of New Jersey
(Civ. No. 03-1979)
District Court Judge: Honorable William H. Walls
_____

Argued on September 22, 2008
_____

Before: BARRY, AMBRO and GARTH, <u>Circuit Judges</u>,
(Filed: October 10, 2008)

Peter S. Pearlman (**Argued**)
Jessica V. Henry
Cohn Lifland Pearlman Herrmann & Knopf LLP
Park 80 Plaza West One
Saddle Brook, NJ 07663
      Attorneys for Plaintiff/Appellant

Marc D. Haefner (**Argued**)
Nicole B. Dory
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068
      Attorneys for Defendants/Appellees

_____

**OPINION**

_____

GARTH, Circuit Judge:

This appeal arises out of a jury verdict awarding the defendant OGK America, Inc. ("OGK") $910,000 on its counterclaim for breach of the implied covenant of good faith and fair dealing. Although the parties raise numerous complaints regarding the trial proceedings, the essence of the appeal is whether the verdict was supportable by the evidence in the record. Plaintiff argues that the verdict was against the weight of the evidence, or in the alternative, that the evidence was legally insufficient. We will affirm.

**I.**

In 1998, Mr. Moon Young Huh, president of Otos Tech Co., Ltd. ("Otos"), and Mr. Yale Kim, president of OGK, entered into an oral agreement under which OGK would act

as Otos's exclusive agent for sales of welding helmets in the United States. In the following years, OGK was instrumental in establishing Otos's presence in the United States. OGK increased Otos's U.S. sales to $8.2 million, representing 88.7% of Otos's worldwide revenues. Kim received a commission for his services, initially 5% in 1998, then reduced by mutual agreement to 4% in 1999 and again to 3% in 2001.

In December 2002, Kevin Lee, an employee at Otos, proposed reducing Kim's commission further to 2.5%. Affronted, Kim confronted Huh in his office in Korea. Nevertheless, after reconsideration, Kim faxed a letter to Otos the following month accepting the reduced commission.

Business continued as normal until February 3, 2003, when Kim sent Otos a proposed written commission contract. In the text of the fax, Kim noted his desire to "clear any mistrust between us," and stated that the agreement was "merely a written document of what we already agreed on." J.A. 123.

Lee responded on February 4, 2003, but did not directly address Kim's request for a formalized commission agreement. Instead, Lee asked for marketing projections and customer information, and asked Kim "to promptly relay customers' requests to [Otos]" going forward. J.A. 124. Lee added that "the rate of commission is certainly not the most pressing matter at hand. If we can establish mutual trust, the commission rate will not be an issue." Id.

In response, Kim asked:

What does trust mean? Does trust mean to change everything as you want without notice? If you think commission rate is not so important, why are you continually trying to reduce it? . . . I need more than verbal statements of trust; for my own protection, I need written agreements. . . . Our relationship is meant to serve our mutual interests; otherwise we should go our separate ways. Therefore, I need a firm written statement from you regarding your intentions.

J.A. 125.

On February 5, 2003, Otos declined to execute the contract, arguing that it reflected Kim's lack of trust. Otos further instructed that Kim was "not to be involved in the business until we can get together to settle our relationship." Appellant's Br. 6-7; J.A. 119. But Otos's e-mail did not clearly terminate the relationship; rather, it stated that Otos would "willingly accept the commission rate of 2.5%, but we reserve the right to consider other options if the above matters are not improved." J.A. 119.

Kim responded via fax that his understanding was that, by declining to sign the commission agreement, Otos was terminating the relationship. He claimed entitlement to commissions on projected sales for the next five years under "international commercial law and custom," J.A. 120, but proposed that he was willing to accept just three years of commissions to "settle" the dispute as promptly as possible. He noted that he would take this amount out of account receivables in the possession of OGK. Otos did not respond to Kim, but instead instructed its customers that OGK's agency was terminated by "mutual agreement." J.A. 121.

On February 19, 2003, Otos discovered that Kim had retained $587,755.05 in

-4-

customer payments that he had failed to forward to Otos. Unable to recover the funds from Kim, Otos filed suit alleging embezzlement, breach of contract, and conversion. OGK asserted counterclaims against Otos for breach of contract, breach of compromise agreement, and breach of implied covenant of good faith and fair dealing. OGK alleged that the parties had an oral agreement for a term of 15 years, that Otos prematurely terminated the agreement, and that Kim's February 5, 2003 fax constituted a settlement offer to which Otos assented.

The jury found that: (1) OGK breached the contract, but that there were no damages for the breach; (2) OGK converted $587,755.05 in customer payments and owed this amount to Otos; and (3) Otos was liable for breach of the implied covenant of good faith and fair dealing and owed $910,000 in damages to OGK.

Otos filed a motion for a new trial, which the District Court denied on August 13, 2007. Otos filed a timely notice of appeal and OGK cross-appealed.

## II.

We exercise jurisdiction under 28 U.S.C. § 1291. The District Court had subject matter jurisdiction under 28 U.S.C. § 1332(a). We review the District Court's denial of a motion for new trial for abuse of discretion. Montgomery County v. Microvote Corp., 320 F.3d 440, 445 (3d Cir. 2003). "Deferential review is appropriate when considering whether a verdict is against the weight of the evidence because the district court was able to observe the witnesses and follow the trial in a way that we cannot replicate by reviewing a cold

record." Greenleaf v. Garlock, Inc., 174 F.3d 352, 366 (3d Cir. 1999) (internal quotations omitted). "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir.1991). An internally inconsistent verdict also can be a ground for ordering a new trial. Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co., 734 F.2d 133, 145 (3d Cir. 1984).

We review for plain error where a party failed to preserve its objections to a jury charge or instruction, or to the failure to give a jury charge or instruction. Franklin Prescriptions, Inc. v. N.Y. Times Co., 424 F.3d 336, 339-40 (3d Cir. 2005). For an appellate court to correct a forfeited error, there must be an "error," the error must be "plain," and the plain error must "affect substantial rights." United States v. Olano, 507 U.S. 725, 732-34 (1993). Plain error review is discretionary and should only be invoked in the civil context "'where the error is so serious and flagrant that it goes to the very integrity of the trial.'" Fashauer v. N.J. Transit Rail Operations, Inc., 57 F.3d 1269, 1289 (3d Cir. 1995) (quoting United States v. Carson, 52 F.3d 1173, 1188 (2d Cir. 1995)).

**III.**

We are satisfied that the evidence presented at trial supports the jury's verdict.[1] The

---

[1] Ordinarily, any claim based on insufficiency of the evidence is waived when the movant failed to move for judgment as a matter of law under Federal Rule of Civil Procedure 50 before the jury retired to deliberate. Greenleaf v. Garlock, Inc., 174 F.3d

jury could have accepted the evidence in the record that Otos intended all along to exclude Kim from any significant profits from his sales efforts, yet willfully misled Kim as to the longevity of the arrangement. Not only did Otos steadily reduce Kim's commission rates over a period of four years for reasons unrelated to performance, but it already had coopted the first client Kim procured, providing prior precedent for such practices.

Kim also testified that Huh told him he did not want Kim to earn too much money. Otos confirmed that it thought it "natural" for Kim's commission rates to decrease as the sales volume increased—even though the reasons given at the time made no mention of sales volume. Moreover, the last rate decrease was proffered by a lower-level employee rather than the president of Otos, a change from prior practice that, culturally, could have been viewed by the jury as a deliberate slight to someone whom Otos had no intention of retaining as an agent.

At the same time, the jury had more than enough evidence to conclude that Otos avoided discussing the length of the contract every time Kim sought confirmation of his commission rates, and then ceased dealing with him as soon as he attempted to secure his

---

352, 364-65 (3d Cir. 1999). However, Otos argues that this waiver was itself waived because OGK did not raise it in its opposition to Otos's motion for a new trial under Rule 59. See Williams v. Runyon, 130 F.3d 568, 571-72 (3d Cir. 1997) (finding a waiver of waiver where a party failed to object to a movant's Rule 50(b) motion specifically on the grounds that the issue was waived by an inadequate Rule 50(a) motion). We find it unnecessary to address or analyze this principle because, by any account, there was more than sufficient evidence from which a jury could infer that Otos was liable for the manner in which it performed the contract.

legal rights in writing.  Kim testified that any attempts to discuss the commission rate were repeatedly downplayed.  Instead, he was told that "[t]he important thing is whether the ADF helmet can be sold or not," J.A. 312, and that a close relationship based on "mutual trust" was more important than the specific commission rate, J.A. 291, 342.  Indeed, Otos actively reassured Kim that they would work together until Kim reached his 70s.[2]  Yet, as soon as Kim attempted to confirm this understanding in writing, Otos refused to sign any agreement and advised him that this effort conveyed a "lack of trust."  Appellant's Br. 6.

In assessing the weight of the evidence, we do not find that the verdict of $910,000 in favor of OGK shocks the conscience, nor was it internally inconsistent.  See Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575 (N.J. 1997); Bak-A-Lum Corp. of America v. Alcoa Bldg. Prods., Inc., 351 A.2d 349 (N.J. 1976).  Although different verdicts might have been reached or imagined, a damages verdict will be affirmed if "there is any view of the case which reconciles the [jury's] various answers."  McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 763 (3d Cir. 1990) (quoting Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1159 (3d Cir. 1989) (emphasis added)).  Here, there was sufficient evidence of OGK having established Otos's product in the United States; OGK having represented Otos for years; and OGK's anticipation of commissions in future years.  Accordingly, we do not find that the District Court abused its discretion in denying Otos's motion for a new trial.

---

[2] In his testimony, Kim stated that he told Huh that the age of 60 would be sufficient.

Otos also argues that the District Court erred in its charge to the jury. Otos contends that the charge misled the jury to believe it could find both a breach of implied covenant and a breach of contract based on the same conduct: the termination of the contract. Alternatively, Otos states that the charge failed to instruct the jury on the need to find "bad faith."

The District Court did not err in its charge or rulings. Hence, we are satisfied that the District Court Judge's charge did not constitute plain error. Although the claims for breach of implied covenant and breach of contract were closely related, the jury was instructed that performance is distinct from termination, and it did not conflate the two concepts in concluding that OGK breached the contract while Otos breached the implied covenant. Moreover, although the District Court did not instruct the jury that it needed to find an affirmative act of bad faith or unconscionable behavior, the District Court did give an instruction that comported with the definition of "good faith" in the UCC. See Wade v. Kessler Institute, 778 A.2d 580, 589 (N.J. Super. Ct. App. Div. 2001).

Otos raises a host of other complaints, including that the District Court erred in denying summary judgment on OGK's claim for breach of implied covenant; that the District Court erred in delaying the dismissal of OGK's claim that Kim's February 5, 2003 fax was a settlement offer, which allowed days of testimony that the jury could not ignore; that the curative instruction was inadequate; and that OGK nevertheless used excluded evidence regarding this settlement offer at closing argument. We find no merit in these claims.

On cross-appeal, OGK requests that the District Court's judgment be amended as a matter of law to include post-judgment interest on the $910,000.[3] Otos does not oppose this claim but merely states that it also is entitled to post-judgment interest on its award of $587,755.05. We agree that post-judgment interest is added as a matter of law. Dunn v. HOVIC, 13 F.3d 58, 61-62 (3d Cir. 1993) ("[P]ost-judgment interest is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it."). Accordingly, we will remand to the District Court to add an award of post-judgment interest to OGK on the amount of $322,244.95—the difference between $910,000 and $587,755.05.[4]

**IV.**

For the foregoing reasons, we will affirm the District Court's order filed August 13, 2007 as to the principal amounts, and remand to the District Court to add post-judgment interest.

---

[3] OGK also argues that the District Court erred in failing to dismiss Otos's conversion claim. We find no merit in this argument. We need not address OGK's third cross-claim as to whether its claim regarding the settlement offer should be allowed on retrial because we do not remand for a new trial.

[4] OGK argues that Otos already received post-judgment interest on a duplicate judgment in Korea, and therefore should not receive post-judgment interest here. Because the issue of duplicate judgment is not before us and is not reflected in the record, we decline OGK's invitation to address the issue of duplicate post-judgment interest.