**Edward and Marion
HALPERIN, Plaintiffs,**

**v.**

**Baron JASPER, Defendant.**

**Civ. A. No. 85–5849.**

United States District Court,
E.D. Pennsylvania.

Oct. 12, 1989.

---

Katharine M. Ryan, Rebecca J. Clemant, Stuart H. Savett, Barbara A. Podell, Philadelphia, Pa., Morris and Rosenthal, P.A., Wilmington, Del., for plaintiffs.

Norman M. Monhait, pro hac vice.

Steven A. Bergstein, Frank, Frank, Penn & Bergstein, P.C., Allentown, Pa., for defendant.

TROUTMAN, Senior District Judge.

## MEMORANDUM

This case involves allegations of securities fraud, a RICO violation and common law torts by plaintiffs Edward and Marion Halperin against Baron Jasper, their long-time accountant and alleged financial advisor.

The facts of this case were set forth in some detail in the Court's Memorandum and Order of November 20, 1987 (Doc. # 13), in which we denied defendant's first motion for summary judgment. Briefly, plaintiffs allege that, unknown to them, defendant had an ongoing financial relationship with the promoter of certain investments recommended to plaintiffs by defendant. Plaintiffs expected and intended that the property investments recommended by defendant would serve as tax shelters. Subsequently, however, the IRS disallowed the deductions which plaintiffs had taken in connection with three of the investments and assessed additional taxes, as well as interest and penalties, against them. The investments themselves are, allegedly, virtually worthless. Plaintiffs have alleged that, had they known of defendant's financial interest in having them invest in these particular properties, they would have scrutinized the investments more carefully and would have considered other options. Believing, however, that defendant's sole interest was to find for them the best tax shelter investments available, plaintiffs allegedly accepted his advice without question.

As noted, the Court denied defendant's first motion for summary judgment, in which he contended that plaintiffs' losses do not constitute cognizable claims under either the securities laws or RICO. In doing so, we held that plaintiffs had sufficiently stated a claim pursuant to § 10(b) of the Securities Exchange Act and Rule 10(b)(5), promulgated thereunder. We also held that no decision with respect to the sufficiency of the RICO claim was then possible and directed plaintiffs to file a RICO Case Statement in order to allow us to, "better assess the viability of that cause of action". *See, Halperin v. Jasper*, No. 85–5849 slip op. at 7, 1987 WL 20192 (E.D.Pa. Nov. 20, 1987).

Subsequently, we granted plaintiffs' motion to reopen discovery for the purpose of obtaining information as to the then-current value of the investments. Plaintiffs later requested three additional extensions of time to obtain that discovery, each request accompanied by a full explanation of the difficulties encountered in gathering the needed information, and the Court granted each such request for good cause shown.

The Court then scheduled a final pre-trial conference for one week after pre-trial memos were due. Unfortunately, defendant's counsel suffered a fractured spine and requested that the conference and trial be postponed until he recovered. At about the time trial could then have been scheduled, new counsel entered an appearance for defendant, necessitating another postponement.

In the interim, the Court of Appeals for the Third Circuit decided the cases of *In Re: Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.1988) and *Hill v. Equitable Trust Co.*, 851 F.2d 691 (3d Cir.1988). In *Data Access*, the court determined that the proper statute of limitations for claims arising under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, promulgated thereunder, is one year from the discovery of facts constituting a violation and, in no event, more than three years after such violation occurred. In *Hill*, the court subsequently determined that, in the appropriate case, *Data Access* could be retroactively applied to bar a cause of action which arose prior to the

selection of the one year/three year limitations period.

These developments in the law prompted defendant's counsel to request additional time before the case was scheduled for trial in order to file a motion for summary judgment on statute of limitations grounds, which the Court granted. That motion is now ready for disposition, oral argument having been held thereon.

## STATUTE OF LIMITATIONS ISSUES

Defendant contends that the investments in question were made in 1976, 1980 and 1981, respectively, and that plaintiff Edward Halperin was first on notice that defendant may have had a financial interest in having him invest in the recommended properties in October, 1984. Although the complaint was filed in October, 1985, defendant contends that the securities claims are nevertheless barred by the statute of limitations in that the alleged violations occurred at the time the investments were made, more than three years prior to the commencement of this action. Defendant further contends that, because plaintiffs' RICO claims allege the securities violations as predicate offenses and because the securities claims are now barred by the statute of limitations, the RICO claims are likewise time-barred.

Plaintiffs do not dispute the essential facts upon which defendant's motion is based. Rather, they argue that, as a matter of law, the *Data Access* decision should not be retroactively applied to bar their securities claims. Plaintiffs further argue that, even if the Court should determine that those claims are time-barred, the RICO claims are not subject to the same limitations period and, hence, are not similarly barred.

■ As the Court of Appeals noted in *Hill*, there is a general rule which favors applying the law in existence at the time an issue is considered. A new rule of law may, however, be applied prospectivley when certain criteria, set forth in the case

of *Chevron v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), are met. In order for a new rule of law to be applied prospectively it must, in the first instance, either overrule clear past precedent or decide an issue of first impression where the resolution was not clearly foreshadowed by prior decisions. Second, the Court must weigh, under the facts of each case, the merits of prospective or retrospective application, taking into account the the history of the new rule, its purpose, effect, and whether retrospective application will further or retard its operation. Finally, the Court must determine whether retrospective application creates the risk of producing substantially inequitable results.

## RETROACTIVE APPLICATION ISSUES

■ Several district courts within the Third Circuit have applied the *Data Access* and *Hill* principles under circumstances which were similar to those confronted herein. In *Gruber v. Price Waterhouse,* 697 F.Supp. 859 (E.D.Pa.1988) and its companion case, *ITG, Inc. v. Price Waterhouse,* 697 F.Supp. 867 (E.D.Pa.1988), the court determined that, prior to the *Data Access* case, there was a clear precedent, *i.e.,* two years, for the statute of limitations applicable to accountants and accounting firms named as defendants in federal securities fraud actions. Thus, the court concluded that, in those cases, *Data Access* should not be retroactively applied.

In another case involving a defendant accounting firm, however, the court concluded that *Hill* effectively settled the issue of whether the law regarding the statute of limitations for securities claims was clearly established at the time *Data Access* was decided. In holding that such statute of limitations was not clearly established, the court made no mention of any exception to the *Hill* determination, *e.g.,* that there was a clearly established period for claims against accounting firms. *Bradford–White v. Ernst & Whinney,* 699 F.Supp. 1085 (E.D.Pa.1988).[1]

---

1. On appeal, the court vacated the district court's grant of summary judgment, and, hence,

its retroactive application of *Data Access* in that case. *Bradford–White Corp. v. Ernst & Whin-*

Similarly, in *Adelaar v. Lauxmont Farms, Inc.*, 695 F.Supp. 821 (M.D.Pa. 1988), the court concluded that *Data Access* should be retroactively applied, determining, *inter alia*, that the *Hill* decision, "foreclose[d] any independent analysis" of the first factor in the retroactivity analysis *i.e.*, the uncertainty of past precedent regarding the statute of limitations. *Id.*, at 824.

Moreover, the *Adelaar* court also considered the argument that equitable tolling should save the claim, a contention which plaintiffs in this case raise as well. In rejecting the use of equitable tolling to prevent retroactive application of the *Data Access* 1 yr./3yr. statute of limitations, the court noted that prior precedent with respect to the operation of equitable tolling where a so-called "statute of repose" is involved was likewise unclear.

Having considered both *Data Access* and *Hill* and the various applications thereof in the district courts of this circuit, we conclude that there was no clearly established past precedent for the statute of limitations applicable to claims such as the one in this case. Even after *Hill*, the district courts cannot agree on what statute of limitations had been applicable to such claims prior to the *Data Access* decision. This alone belies any contention that *Data Access* overruled clear past precedent as to the properly applicable statute of limitations.

Plaintiffs contend, however, that the clear past precedent which was overruled in *Data Access* and upon which they rely to persuade the Court that we should not, therefore, apply *Data Access* retroactively is the federal tolling doctrine. By this plaintiffs mean that, prior to *Data Access*, it was clear that federal law determined when the statute of limitations began to run and that the limitations period did not begin until the claimant discovered, or could have discovered, the facts upon which the claim is based.

In our view, *Data Access* did not overrule the principle enunciated above. The very fact that the limitations period selected in *Data Access* is a 1 yr./3 yr. statute contemplates the continuation of the "equitable tolling doctrine" or, as it is sometimes described, the "discovery rule". As noted in *Hill*, plaintiffs have three years from the time of a securities transaction within which to discover that it has given rise to a claim and to file the claim, but no longer than three years. Thus, assuming, as plaintiffs argue, that equitable tolling or the discovery rule represents clear past precedent with respect to securities claims, it is still in effect. At most, *Data Access* imposed a limit on the allowable discovery period. Although the court in *Hill* did not specifically and explicitly examine past precedent in the light of whether, prior to *Data Access*, such discovery period was unlimited, its conclusion that past precedent regarding the applicable statute of limitations was unclear sufficiently covers the issue. Consequently, we conclude that the *Hill* court's determination that past precedent regarding the statute of limitations for § 10(b) and Rule 10(b)(5) securities claims was unclear is not distinguishable because of its alleged effect on the doctrine of equitable tolling. Moreover, even if we were to conclude that the *Hill* case is not binding precedent with respect to the first factor in determining whether the *Data Access* rule should be applied retroactively, our own analysis of the state of past precedent leads to the same result.

Plaintiffs further argue that application of the 1 yr./3 yr. limitations period in this case would retard the policies of § 10(b) and Rule 10(b)(5) and that it would be inequitable. In the context of this suit, we conclude that retroactive application of *Data Access* would actually have the opposite effect insofar as both of these factors are concerned.

Any statute of limitations rule is imposed for the purpose of eliminating stale claims. The desirability of such a policy is obvious

*ney,* 872 F.2d 1153 (3d Cir.1989). In doing so, however, the court did not reach the issue of the propriety of retroactively applying the 1 yr./3yr. statute of limitations. Rather, the court held

that defendant had waived the statute of limitations affirmative defense by failing to raise it at or before trial.

in many contexts when matters of, *e.g.*, the availability evidence are considered. Here, in addition to such traditional concerns, the proper operation of a statutory and regulatory scheme is implicated.

The laws regulating securities transactions sweep broadly, as they must to fully effectuate their purpose. At the same time, however, the statute and regulation upon which plaintiffs' claims are based attempts to assure fair dealing and promote full disclosure in a world of volatile markets, rapidly shifting fortunes and multiple purposes for purchasing and selling securities. Here, *e.g.*, the primary purpose of the transactions was to gain a tax advantage, not to acquire a profitable investment. Indeed, the inquiry which led to the discovery of the alleged material misrepresentation was prompted by disallowance of the tax deductions taken by plaintiffs. But for that, plaintiffs would, apparently, have been perfectly satisfied with their allegedly worthless investments.[2] True, as we previously held, there are triable issues of material fact relating to the substance of plaintiffs claims. Also true is the fact that plaintiffs may choose to pursue or not to pursue an alleged violation of the Securities Exchange Act and their reasons for doing so or not doing so have no effect on the substance of their claims. We conclude, however, that it advances the purposes of the Act, and especially of the statute of limitations applicable thereto, to require plaintiffs to make the decision as to whether to pursue a claim within an absolute limit of three years from the date of the transaction. Such a rule is more likely to encourage claims which are focused more precisely on the purpose of § 10(b) and Rule 10(b)(5), *i.e.*, redressing and deterring fraudulent practices and material misrepresentations in connection with the sale of securities. It correspondingly reduces

the chance for selective enforcement of the law through private actions prompted by dissatisfaction with the results obtained from allegedly tainted transactions, which may be affected by many factors other than the alleged violations of the law.

We are similarly unpersuaded that retroactive application of the *Data Access* statute of limitations is inequitable. Just as plaintiff would prefer that the old rule be applied here, so defendant prefers the current rule, which is the course favored by the law. This Court has already concluded that two of the factors to be considered in deciding whether to deviate from the usual practice of applying the law as it exists at the time of trial do not favor such deviation. Moreover, the case of *Chevron Oil* upon which the retroactivity analysis is based, reiterated the concept that non-retroactivity may be applied where the court's decision would, "Produce *substantial* inequitable results." 404 U.S. at 107, 92 S.Ct. at 355, 30 L.Ed.2d at 306. (Emphasis added). Thus, plaintiffs must demonstrate more than the fact that they would be deprived of an opportunity to present their claims at trial, for that is always and inevitably the result of retroactive application of a new statute of limitations rule under circumstance analogous to those here present.

In attempting to demonstrate the inequity of retroactive application to this case of the shorter statute of limitations mandated by *Data Access*, plaintiffs hearken back to their desire to await the outcome of defendant's negotiations with the IRS on their behalf before deciding whether to bring an action against him. *See*, Doc. # 28 at 11, 21. This was a strategic and tactical decision on their part, based upon their desire to obtain the best possible outcome to their tax difficulties. Admittedly, they knew the

---

**2.** We note, in this regard, that plaintiffs also invested in another tax shelter, known as Crest Oil, which was likewise promoted by the same person involved in the disputed transactions and was not only recommended by defendant Jasper, but organized by him as well. Plaintiffs assert that they make no claims with respect to this transaction for fear that the IRS would then scrutinize deductions taken in connection with

it. *See*, Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment, Doc. # 28 at 8.

This election by the plaintiffs, perfectly proper though it is, serves to illustrate the point that the potential exists for this law, in particular, to be used selectively to further primarily the extraneous objectives of individual claimants rather than its own purposes.

facts upon which their securities claim is based by November, 1984. From plaintiffs' statements of the facts of this case, it appears that several investments recommended by defendant were made within three years of that date, and as plaintiffs admit, had suit been brought immediately upon discovery of defendant's relationship to the promoter of those investments, *Data Access* would likely not have had a completely preclusive effect upon their suit.

Moreover, under normal circumstances this case would have been tried long before *Data Access* was decided in 1988. The initial and principal reason for the delay was plaintiffs' requests for two extensions of the discovery period after it had been closed and after defendant's first motion for summary judgment was decided. *See,* Orders of December 18, 1987 and March 3, 1988, Doc. ## 15 & 23. Such requests were understandable in light of the memorandum accompanying this Court's order denying the prior motion for summary judgment, wherein it was intimated that plaintiffs' losses from disallowance of tax deductions are not cognizable injuries under the securities laws. In fact, plaintiffs' claims survived summary judgment based upon our conclusion that plaintiffs had sufficiently demonstrated that the investments themselves were valueless. Thus, plaintiffs naturally wanted to be certain that they could present at trial a convincing damages case in order to recoup their losses from the investments if they succeeded in proving that defendant had violated § 10(b) and Rule 10b(5). Again, the decisions to request additional time for discovery were made for the purpose of enhancing plaintiffs' chances for good results in their lawsuit. At times, such decisions work to the detriment rather than the benefit of the decision-makers. That is a hazard of any litigation, not an inequity resulting from application of a new rule of law.

On the other hand, although defendant was later responsible for some delays in bringing this case to trial, it was not as a result of conscious choices or strategic decisions. Original defense counsel suffered an unfortunate and serious injury during the time plaintiffs were conducting their additional discovery and later had to withdraw from the case entirely. Obviously, new counsel had to be given an opportunity to become familiar with the case. By the time that was accomplished, the statute of limitations had become an issue by virtue of the *Data Access* decision. The Court could not deny defendant an opportunity to assert a newly viable defense upon his prompt request to do so.

In short, the Court sees no inequity to plaintiffs as a result of their having to suffer the consequence of losing a substantively viable cause of action to a statute of limitations bar. That is always a risk inherent in delaying suit and in delaying trial. It is no more just or equitable to force defendant to proceed to trial in contravention of a complete defense than it is to foreclose a viable claim.

For all of the foregoing reasons, the Court concludes that it would be inappropriate not to apply the *Data Access* 1 yr./3yr. statute of limitations to this case. Consequently, we will grant defendant's motion for summary judgment with respect to claims based upon a violation of § 10(b) of the Securities Exchange Act and Rule 10(b)(5).

## RICO ISSUES

■ In the most recent motion for summary judgment, based solely upon statute of limitations grounds, defendant contends that if plaintiffs' securities claims are barred by the statute of limitations, the RICO claim is likewise barred, since the alleged § 10(b) and Rule 10(b)(5) violations are the predicate acts upon which the RICO claims are based. At oral argument, however, defendant did not press this argument. In addition, the cases cited in defendant's brief to support the contention that the RICO claims are untimely were decided prior to the Supreme Court's decision in *Agency Holding Corp. v. Malley–Duff Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), in which the statute of limitations for RICO claims was held to be four years. Defendant has not cited, and the Court has not found, any case since

that time which imposed a shorter limitations period. Similarly, there does not appear to be any authority for the proposition that predicate acts which are cognizable independent claims, substantively, but which are barred by the statute of limitations, cannot serve as predicate acts for a RICO claim.

■ This rejection of defendant's most recent argument for dismissal of plaintiffs' RICO claims does not end our consideration of the continued viability of that cause of action, however. Still outstanding are issues raised in defendant's original motion for summary judgment, in which he contended that plaintiffs had not stated a cognizable RICO claim as a matter of law. Summary judgment was denied at that time in order to give plaintiffs the opportunity to demonstrate the validity of such a claim by means of a RICO case statement, but no substantive decision on the merits was ever rendered.[3]

Whether by oversight or design, no party has since revisited the issues raised by the original motion in light of the plaintiffs' RICO case statement. Ordinarily, the Court would assume that any deficiency in the claim which we now perceived because of the additional detail required by the RICO case statement could await defendant's renewed motion at the directed verdict stage at trial. Here, however, the Court is faced with a unique situation. As a result of our ruling that the independent securities fraud claim is barred by the statute of limitations, trial of the issues related thereto would proceed only in connection with plaintiffs' RICO claims. Proof of a RICO violation, however, requires not only evidence of securities fraud, the alleged predicate acts, but evidence of the other elements of a RICO claim or claims.[4] It has now become apparent, from our review of plaintiffs' RICO case statement, that, by their own admission, plaintiffs have no evidence to support one of the elements of their RICO claim, *viz.*, that the predicate acts, even if properly proved, constitute a "pattern of racketeering activity". It is essential that this element be present in order to state a cognizable RICO claim. (*See*, n. 4, *supra.*).

Twice in the RICO case statement, where plaintiffs are required to describe the alleged pattern of racketeering activity, they make reference only to the allegations that defendant committed three acts of securities fraud within the time limits set forth in the RICO statute. *See*, RICO Case Statement, Doc. # 14 at 3, 4. Further, plaintiffs state that, "There is no evidence indicating whether the predicate acts relate to each other as part of a common plan", *Id.*, at 4,

---

3. Although the original motion seeking elimination of plaintiffs' RICO claims was characterized as one for summary judgment, the actual basis for it was defendant's contention that plaintiffs had failed, as a matter of law, to state a RICO claim. As such, it directs the Court's attention to the sufficiency of the allegations in light of the statutory requirements, *i.e.*, whether, assuming the truth of the facts as alleged by plaintiffs, those facts constitute a RICO violation.

The focus of defendant's argument in that regard was that no predicate acts had been committed because plaintiffs had failed to state a cognizable claim for securities fraud. This argument, dependent as it was upon our agreement with defendant's arguments on that issue, was ultimately rejected. Nevertheless, defendant also raised an issue, in general, as to the sufficiency of plaintiffs' RICO claims. This Court was, therefore, alerted to potential deficiencies in those claims. Hence, our order that plaintiffs file a detailed RICO case statement.

4. In order to state a successful RICO claim, a plaintiff is always required to prove a pattern of racketeering activity, and the existence of one

or more enterprises, the activities of which affect interstate commerce. Depending upon the specific sections of the RICO statute alleged to be the basis of the claim or claims, the plaintiff is also required to prove: that the defendant derived income from a pattern of racketeering activity and used such income to acquire an interest in or operate an enterprise, (18 U.S.C. § 1962(a)); that the defendant acquired or maintained an interest in or control of an enterprise through a pattern of racketeering activity, (§ 1962(b)); that the defendant was employed by or associated with an enterprise and conducted or participated in the affairs thereof through a pattern of racketeering activity, (§ 1962(c)). *H.J., Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

The relevant terms comprising the elements of each type of RICO claim are defined in the statute and, where not sufficiently explicit, such definitions and/or proper use thereof have been further refined by means of court decisions.

and "To the extent Mr. Jasper engaged in recommending investments to persons other than plaintiffs, plaintiffs do not know if he withheld from such persons the same information he withheld from them." *Id.,* at 6.

Although the precise meaning of the term "pattern of racketeering activity" has not yet been finalized, and may never be in the sense of a "cookbook" formula applicable to every possible RICO claim, the outer limits of the term have now been limned. In the statute itself, "pattern of racketeering activity" is defined only in terms of requiring at least two acts of racketeering activity within a specified time frame. It has now been further explained, however, that establishing this element requires more than proof by the plaintiff that the defendant engaged in at least two predicate acts. Plaintiffs are required to prove, in addition, that the predicates are related and that they pose a threat of continuing racketeering activity. *H.J., Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Thus, plaintiffs' statements that: (1) there is no evidence as to whether the predicate acts were related to each other in a common scheme; (2) there is no evidence as to whether defendant ever engaged in the alleged predicate acts before or since the instances of which plaintiffs complain; (3) the pattern of racketeering activity consists simply in the fact that three predicate acts of racketeering activity occurred within the proper time limit, demonstrate that, as a matter of law, plaintiffs cannot prove an essential element of their RICO claim. Consequently, the Court has no recourse but to dismiss that claim.

Moreover, even absent the most recent Supreme Court pronouncement regarding the contours of the RICO pattern requirement, this Court would have been required to reach the same result. Unequivocal notice that the bare recitation of a statutorily sufficient number of alleged predicate acts is nevertheless insufficient to state a cognizable RICO claim was first given in *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (n. 14) (1985). The Court of Appeals for the Third

Circuit subsequently, but before plaintiffs' RICO case statement in this case was ordered, fashioned a six point test to aid in determining whether the alleged predicate acts amount to a RICO pattern. *Barticheck v. Fidelity Union Bank,* 832 F.2d 36 (3d Cir.1987). That test continues to be used in this circuit, *see,. e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir.1989), and would thus be employed at trial to determine whether plaintiffs had presented sufficient evidence of the RICO claim for a jury to return a verdict thereon in their favor. Assuming that plaintiffs would present evidence of a pattern of racketeering activity in accordance with their RICO case statement, it is obvious that the jury could not, on that basis return a verdict in plaintiffs' favor. In fact, the Court could not permit the RICO claim to be considered by the jury if plaintiffs fail to present any evidence to support an essential element thereof.

As noted, if the securities claims, which are the predicate acts, were also tried as independent claims, the waste of judicial resources inherent in allowing the RICO claim to proceed simultaneously until the directed verdict stage would be minimal. Now, however, evidence of the securities claims would be necessary and permitted only in connection with proof of the RICO claims. If there is insufficient evidence, and indeed, no attempt to adduce or provide sufficient evidence of an essential element of those claims, trial on plaintiffs' federal claims would be futile and an unnecessary waste of time and resources.

In accordance with the Court's decisions regarding the statute of limitations with respect to plaintiffs' securities fraud claim and plaintiffs' inability to state a cognizable RICO claim, there will no longer be any federal claims for trial before this Court. We will, therefore, exercise our discretion to dismiss, without prejudice, plaintiffs' state law claims so that plaintiffs may assert them in an appropriate forum.

## ORDER

AND NOW, this 10th day of October, 1989, upon consideration of defendant's

motion for summary judgment and plaintiffs' response thereto, IT IS ORDERED that the motion is GRANTED, in part, and judgment is entered in favor of the defendant and against the plaintiff as to Count I of the Amended Complaint.

IT IS FURTHER ORDERED that, in accordance with the accompanying Memorandum, Count II of the Amended Complaint is DISMISSED with prejudice and the remainder of the Amended Complaint is DISMISSED without prejudice.